# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| LORENZO WIGGINS, ) | |
| ) | |
| ) | |
| Plaintiff, ) | No. 15 C 02769 |
| ) | |
| v. ) | |
| ) | Judge Edmond E. Chang |
| ILLINOIS BELL TELEPHONE COMPANY ) | |
| d/b/a AT&T Illinois, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

## I. Introduction

Plaintiff Lorenzo Wiggins brings claims under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, and the Illinois Minimum Wage Law (IMWL), 820 ILCS 105/1 *et seq.*, alleging that his employer, Illinois Bell Telephone Company, did not pay him overtime compensation for the time that he worked before his shift started each day and for the time that he worked during what should have been his lunch breaks.[1] Wiggins seeks damages going back to September 6, 2008, arguing that a prior case, litigated initially as an FLSA collective action and as a proposed IMWL class action, tolled the statute of limitations on his claims. Illinois Bell moved to dismiss all claims before February 28, 2011, countering that tolling does not apply because the scope of the claims in this lawsuit exceeds the scope of the claims in the

---

[1]The Court has subject matter jurisdiction over the federal FLSA claims under 28 U.S.C. § 1331, 29 U.S.C. § 201 *et seq.* The Court also has subject matter jurisdiction over the state law IMWL claims under 28 U.S.C. §1367(a) because "they form part of the same case or controversy." Citations to the record are noted as "R." followed by the docket number and the page or paragraph number.

prior action. The Court denies Illinois Bell's motion in part and grants it in part. The statute of limitations is tolled for all of Wiggins's unpaid lunch-hour claims—regardless of the type of work allegedly performed—and these claims extend back to September 6, 2008 at the earliest. Illinois Bell's motion is thus denied as to these lunch claims. The statute of limitations is not tolled, however, for Wiggins's pre-shift work claims, because the claims do not share a common factual basis with the prior action. Thus, Illinois Bell's motion is granted on these pre-shift claims, which extend back to February 28, 2011 at the earliest.

## II. Background

Lorenzo Wiggins worked as a technician and hourly employee for Illinois Bell. R. 4, Pl.'s Am. Compl. ¶¶ 1, 9. He alleges that Illinois Bell did not pay him overtime for work that he performed before he started his shift every morning and during lunch. *Id.* ¶¶ 9-28. On a typical workday, Wiggins reported to a garage in the morning before heading out to his assigned tasks. *Id.* ¶¶ 10, 17. Wiggins did not punch a time clock when he arrived at the garage in the morning; rather, employees only reported the time that they spent on each discrete task during the day. *Id.* ¶¶ 13, 16. When he was at the garage before each shift's start, Wiggins was required to prepare his truck and meet with supervisors and coworkers about his assigned jobs for the day. *Id.* ¶¶ 18-20. Wiggins alleges that he was not paid overtime for the fifteen minutes he spent every morning on these planning tasks, as his shift would not formally start until shortly before leaving the garage. *Id.* ¶¶ 13, 17, 20.

2

Wiggins also alleges that he often worked through lunch. *Id.* ¶¶ 21-28. During his half-hour break, he had to either complete on-the-job training under a senior technician or drive between job sites. *Id.* ¶¶ 22, 26. Despite working during his lunch breaks, Illinois Bell automatically deducted a half hour for lunch every day and did not provide a code to report work completed during lunch. *Id.* ¶¶ 27-28.

Also relevant to this case is an extensive series of events that predated Wiggins's filing of his amended complaint. In January 2011, several Illinois Bell employees filed an FLSA collective action and an IMWL class action in this district in a case called *Blakes*. Am. Compl. ¶ 2; R. 11, Def.'s Br. at 1-2 (citing *Blakes v. Ill. Bell Tel. Co.*, 1:11-cv-000336). *Blakes* involved cable splicers' allegations of unpaid overtime for working during lunch and after their shifts concluded. Def.'s Br., Exh. A, *Blakes* Compl. On September 6, 2011, Wiggins filed his opt-in consent to the FLSA collective action in *Blakes*. Am. Compl. ¶ 4; Def.'s Br. at 3. On December 17, 2013, after more discovery and litigation in the case, Judge Kim decertified the collective action as to several claims, *Blakes v. Illinois Bell Tel. Co.*, 2013 WL 6662831, at *1 (N.D. Ill. Dec. 17, 2013), but stayed the decertification order until February 28, 2014 to give plaintiffs time to file individual lawsuits, Def.'s Br. at 3 (citing *Blakes*, R. 239). On February 28, 2014, Wiggins and dozens of other plaintiffs filed their individual FLSA and IMWL claims in *Tinoco v. Ill. Bell. Tel. Co.*, 1:14-cv-01456. Def.'s Br. at 3. On March 24, 2015, Judge Castillo severed the plaintiffs' misjoined claims, permitting plaintiffs to file individual actions by July 30, 2015. *Id.*

3

(citing *Tinoco*, R. 147). Wiggins then filed his amended complaint in this case on July 29, 2015. R. 4.

At issue now is whether the original *Blakes* action tolls the statute of limitations in Wiggins's current case. The FLSA provides a two-year statute of limitations for ordinary claims and a three-year limitations period for willful violations. 29 U.S.C. § 255(a). The IMWL has a three-year limitations period for all claims. 820 ILCS 105/12(a). The parties agree that Wiggins originally filed this action on February 28, 2014, the date of the first *Tinoco* complaint. Am. Compl. ¶ 4; Def.'s Br. at 5. Ordinarily, it would be untimely for Wiggins to bring any claims before February 28, 2012 for non-willful FLSA violations, or before February 28, 2011 for willful FLSA violations and for any IMWL violations. Def.'s Br. at 5. But because of the original *Blakes* action, Wiggins now argues that his "FLSA claim relates back at least two (2) and potentially three (3) years … from the date of the filing of his written consent in the *Blakes* Action, September 6, 2011." Am. Compl. ¶ 4. So according to Wiggins, he can reach back and recover for violations as early as September 6, 2008. R. 14, Pl.'s Resp. at 4. Illinois Bell does not dispute that a collective or class action might toll statutes of limitations in later-brought individual cases. Instead, it argues that tolling does not apply in this case because Wiggins's current claims were never part of the original *Blakes* action. Def.'s Br. at 6. It is on this basis that Illinois Bell filed this motion to dismiss all claims predating February 28, 2011. R. 10.

4

## III. Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (citation and quotations omitted). The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. And the allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 679.

## IV. Analysis

### 1. Propriety of Motion to Dismiss

As an initial matter, Wiggins argues that "[d]ismissing a complaint as untimely is unusual because a plaintiff need not plead to overcome the statute of limitations affirmative defense." Pl.'s Resp. at 2. It is true that "plaintiffs need not anticipate and attempt to plead around all potential defenses." *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004). And "[s]tatute of limitations defenses are frequently inappropriate for resolution on a motion to dismiss because their application often depends upon factual determinations." *Spann v. Cmty. Bank of N. Virginia*, 2004 WL 691785, at *2 (N.D. Ill. Mar. 30, 2004). The Court also acknowledges that judges in this district have denied motions to dismiss (where Illinois Bell made similar arguments) in other cases arising from the *Blakes/Tinoco* progeny. *See Howard v. Ill. Bell Tel. Co.*, 1:15-cv-02720, R. 13 (denying Illinois Bell's motion to dismiss because the statute of limitations is an affirmative defense not suited for 12(b)(6) resolution); *Wright v. Ill. Bell Tel. Co.*, 1:15-cv-02770, R. 14 (same).

The Court could do the same here, but it is also appropriate to address an affirmative defense in a motion to dismiss when "the Complaint so thoroughly anticipated" the defense. *Hecker v. Deere & Co.*, 556 F.3d 575, 588 (7th Cir. 2009) ("Plaintiffs here chose to anticipate the [ERISA safe harbor] defense in their Complaint explicitly and thus put it in play"); *see also, e.g., Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008) ("a party may plead itself out of court by

pleading facts that establish an impenetrable defense to its claims."). In *Spann*, the court addressed the tolling effect of a prior class action in a motion to dismiss because "[i]f a plaintiff alleges facts that show that his action is time-barred, however, he may plead himself out of court." 2004 WL 691785, at *2. Similarly, here, Wiggins chose to anticipate the statute of limitations defense in his amended complaint and thus put it at issue when he alleged that

> This lawsuit was initially filed on February 28, 2014, prior to the effective date of decertification in the *Blakes* action. Therefore, Wiggins's FLSA claim relates back at least two (2) years and potentially three (3) years (if there is a finding of willfulness) … from the date of the filing of his written consent in the *Blakes* Action, September 6, 2011.

Am. Compl. ¶ 4. Further, Wiggins has not identified a specific fact that is in dispute or that needs to be developed in discovery before it is possible to decide the statute of limitations issue. It would be one thing if Wiggins could articulate a disputed set of facts that was material to deciding the limitations issue, or if Wiggins could explain what discovery he might need in order to generate evidence to stave off the limitations defense. But he has not done so. Absent even a *potential* need for factual development, the motion to "dismiss" filed by Illinois Bell is really no different from an early summary judgment motion on an agreed set of facts. It is thus proper for the Court to address the statute of limitations defense at this stage.

### 2. *American Pipe* Tolling

In *American Pipe & Construction Co. v. Utah*, the Supreme Court created a rule for tolling in the class action context, holding that "the commencement of a class action suspends the applicable statute of limitations as to all asserted

7

members of the class who would have been parties had the suit been permitted to continue as a class action." 414 U.S. 538, 554 (1974). This tolling lasts "only during the pendency of the motion to strip the suit of its class action character." *Id.* at 561. Although *American Pipe* announced this tolling principle in the context of plaintiffs who intervened in a class action, the Supreme Court later extended the theory to situations where plaintiffs filed a new lawsuit, noting that the tolling period continues until the denial of class certification. *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 350, 354 (1983). In the context of FLSA collective actions,[2] the "commencement" of the action—or when the tolling begins—is when a plaintiff files his written consent to opt into the lawsuit. 29 U.S.C. § 256 ("[I]n the case of a collective or class action … [the action] shall be considered to be commenced in the case of any individual claimant … on the subsequent date on which such written consent is filed in the court in which the action was commenced."). *See Groshek v. Babcock & Wilcox Tubular Products Div.*, 425 F. Supp. 232, 234 (E.D. Wis. 1977) (tolling in a FLSA collective action begins when plaintiffs filed written consents and not on the original filing date). The tolling ends when class certification (or, in this context, collective-action status) has been denied. *Spann*, 2004 WL 691785, at *4 (citing *Crown, Cork*, 462 U.S. at 353-54).

---

[2] The FLSA allows employees to bring a collective action, which is "similar to, but distinct from the typical class action brought pursuant to Fed. R. Civ. P. 23. The principle difference is that plaintiffs who wish to be included in a collective action must affirmatively opt-in to the suit by filing a written consent with the court, while the typical class action includes all potential plaintiffs that meet the class definition and do not opt-out." *Alvarez v. City of Chicago*, 605 F.3d 445, 448 (7th Cir. 2010); 29 U.S.C. § 216(b).

Illinois Bell agrees that *American Pipe* tolling applies here: "Because Plaintiff timely filed his individual complaint after the decertification order in the *Blakes* action, Illinois Bell does not dispute that the statute of limitations was tolled … ." Def.'s Br. at 5. The only dispute is *which* claims are tolled—put another way, what is "the relationship necessary between the putative class claims from the class action and the claims in an individual law suit to preserve individual claims that would otherwise be untimely[?]" *Sellers v. Bragg*, 2005 WL 1667406, at *6 (N.D. Ill. July 13, 2005). Wiggins argues that *Blakes* tolled the statute of limitations for *all* FLSA overtime claims regardless of their nature, so tolling is not limited to "any specific off-the-clock work performed." Pl.'s Resp. at 5. On the other end of the spectrum, Illinois Bell believes that "tolling applies only to the claims that were actually part of the *Blakes* conditionally certified collective action." Def.'s Br. at 7. The right answer is somewhere in between these two extremes.

Tolling applies when the plaintiff "possess[es] a claim that the prior class action asserted." Newberg on Class Actions § 9:60 (5th ed.). This does not mean that "a subsequent individual suit … [must] be identical in every respect to an earlier class action," but only that "the claims … share a common factual basis or legal nexus." *Id.* Put another way, the claims must be "substantially similar." *Finwall v. City of Chicago*, 2007 WL 2404611, at *2 (N.D. Ill. Aug. 16, 2007). The main concern—as with any statute of limitations—is fair notice, so "the class proceeding must provide the defendant with 'ample notice' of the plaintiff's individual claim." Newberg on Class Actions § 9.60. To prevent prejudice, a "district court should take

9

care to ensure that the suit raises claims that concern the same evidence, memories, and witnesses as the subject matter of the original class suit." *Sellers*, 2005 WL 1667406, at *6 (quotations omitted) (quoting *American Pipe*, 414 U.S. at 562 (Blackmun, J., concurring)). "In other words, the emphasis seems to be on the similarity of the claims and the underlying factual predicates between the proposed claims for which tolling is asserted and the putative class claims in the prior litigation." *Id.* (plaintiff's malicious prosecution claim involving "allegedly coerced identifications, allegedly false police reports, and the initiation of knowingly baseless criminal proceedings" was "not fairly encompassed within the issues" of the prior unlawful detention class action claim concerning "the length and conditions of a plaintiff's detention immediately following his or her warrantless arrest."). *See also, e.g.*, *In re Copper Antitrust Litigation*, 436 F.3d 782, 793-97 (7th Cir. 2006) (scope of claims was not the same when plaintiffs brought federal antitrust claims and prior class action asserted state antitrust claims); *Finwall*, 2007 WL 2404611, at *2 (the two unlawful detention claims were "substantially similar"); *Spann*, 2004 WL 691785, at *6 (tolling was "incompatible" with Truth in Lending Act rescission claim; even if statute of limitations could be tolled, the plaintiff's TILA and Home Ownership and Equity Protection Act claims were not raised in the original class action, which involved only state law claims).[3]

---

[3] Although *Blakes* involved an FLSA collective action, it is appropriate to analogize to tolling cases involving Rule 23 class actions. The Seventh Circuit explained that collective actions and class actions are similar—"there isn't a good reason to have different standards for the certification of the two different types of action, and the case law has largely merged the standards." *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 774 (7th Cir. 2013). The Rule 23 standards thus "are as relevant to collective actions as to class actions." *Id.* To be

Practically, this means that a court should look to the class-action (or collective-action) complaint to determine whether its claims are "substantially similar" to the ones now brought individually. *Finwall*, 2007 WL 2404611, at *2. For example, in *Rochford v. Joyce*, 755 F. Supp. 1423, 1428 (N.D. Ill. 1990), the plaintiff filed individual ERISA and Labor Management Relations Act claims. That the prior class action did not involve an ERISA claim was not dispositive of the tolling issue, because "there is no need for the suits to be identical." *Id.* (citations omitted). Instead, the court looked at the class-action complaint to determine whether it contained the same factual predicate as the ERISA claim now alleged. *Id.* (ultimately concluding that the class-action complaint only provided "generalized allegations" that did not give notice of the current ERISA claims). Illinois Bell's argument—that tolling only applies to the claims that were conditionally certified in the prior action—is therefore too narrow, and in any event, Illinois Bell cites no authority for this standard. Def.'s Br. at 7.

### 3. Wiggins's Lunch Claims

Looking now to the *Blakes* complaint, as well as to the amended complaint filed later in *Blakes*, the Court concludes that the statute of limitations is tolled for

---

sure, the Supreme Court has recently cast doubt on whether it is appropriate to simply take Rule 23 class-action principles and apply them to FLSA collective actions across the board. In *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1528 n.1 (2013), for example, the Supreme Court "note[d] that there are significant differences between certification under Federal Rule of Civil Procedure 23 and the joinder process under § 216(b)." Having said that, for purposes of tolling a limitations period, there is no reason to believe that the two types of actions should be treated differently because the purpose of limitations periods in both contexts is the same: to provide notice to the defendant that the plaintiff is bringing the claim.

Wiggins's current claims involving unpaid work during lunch.[4] The *Blakes* complaints contained factual allegations about working during lunch hours that are similar to the allegations in this action. In the original *Blakes* complaint, the plaintiffs claimed that they "are often scheduled to do work at multiple locations and must travel from job site to job site," and that "[b]ecause the Plaintiffs must maintain a job-site and/or travel between job-sites, Plaintiffs and similarly situated others do not regularly take an uninterrupted lunch break for a half-hour." *Blakes* Compl. ¶¶ 25, 26. The plaintiffs were never paid for this time because "AT&T requires Plaintiffs and similarly situated others to include a half-hour lunch in their time sheets whether or not it was taken, unless it was previously approved by a supervisor." *Id.* ¶ 17. The *Blakes* amended complaint included these same allegations. *Blakes*, 1:11-cv-00336, R. 11, Am. Compl. ¶¶ 17, 25-26.

The allegations in *Blakes* are substantially similar to Wiggins's current lunch claims. Wiggins now alleges that "[e]ach workday, [he] typically ate his lunch while working on the jobsite or while driving between jobsites." Am Compl. ¶ 26. In addition to driving between jobsites, Wiggins often had to complete job training during his lunch breaks. *Id.* ¶¶ 21-22. And he was not paid for this time because Illinois Bell "automatically deducted one half hour from Wiggins' pay for lunch" and

---

[4] Although Wiggins did not attach the *Blakes* complaint or amended complaint to his current amended complaint, the Court may consider "matters of the public record," such as court filings, in a motion to dismiss. *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994). The Court is also permitted to consider any documents incorporated or referenced in Wiggins's complaint. *See Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002) (an "authentic document central to the plaintiff's claim" can be considered in a 12(b)(6) motion). The *Blakes* pleadings are central to Wiggins's argument that the statute of limitations should now be tolled. Am. Compl. ¶¶ 2-4.

did not provide any code to account for time worked during lunch. *Id.* ¶¶ 27-28. Illinois Bell argues that tolling is only appropriate for the lunch claims that were conditionally certified in *Blakes*, namely, "traveling among job sites and providing job site security." R. 16, Def.'s Reply at 12. Thus, it would exclude Wiggins's allegations about completing on-the-job training during lunch. But this is not the standard. The statute of limitations is tolled for all of Wiggins's lunch claims, regardless of the type of worked allegedly performed, because the claims share the same factual and legal nexus as the *Blakes* allegations—that Illinois Bell failed to compensate employees for time worked during their lunch breaks. *Blakes* provided Illinois Bell with ample notice that its employees were being deprived of an uninterrupted lunch break because Illinois Bell allegedly deducted the 30-minute lunch block even though the employees might have worked all or some of that time. The statute of limitations for the FLSA and IMWL lunch claims are thus tolled from the date Wiggins filed his written consent in *Blakes* on September 6, 2011, until the class was decertified and Wiggins filed his *Tinoco* complaint on February 28, 2014.[5]

---

[5]Illinois Bell does not explicitly challenge the propriety of tolling the state law IMWL claims. But the IMWL claims are subject to the same tolling principles as the federal FLSA claims. *See, e.g.*, *Phillips v. WellPoint, Inc.*, 900 F. Supp. 2d 870, 881 (S.D. Ill. 2012) (tolling applied to state law claims brought in state court and then removed to federal court, when there was a prior class action also brought in state court and removed to federal court); *Villanueva v. Davis Bancorp, Inc.*, 2011 WL 2745936, at *5 (N.D. Ill. July 8, 2011) (court allowed tolling in an IMWL case when there was a prior federal court IMWL class action); *Steinberg v. Chicago Medical School*, 371 N.E.2d 634 (Ill. 1977) (adopting the *American Pipe* rule for state class actions). Although Illinois does not adopt *American Pipe* tolling in the cross-jurisdictional context, *Portwood v. Ford Motor Co.*, 701 N.E.2d 1102, 1103 (Ill. 1998), "'cross-jurisdictional' refers to situations where the same claims have been filed in different forums," *Villanueva*, 2011 WL 2745936, at *5. Because this is not a situation where the two cases crossed state and federal jurisdictions, cross-jurisdictional tolling prohibitions do not apply. *But see Ottaviano v. Home Depot, Inc., USA*, 701 F. Supp. 2d

At most, these lunch claims extend back (1) two years to September 6, 2009 for non-willful FLSA violations; or (2) three years to September 6, 2008 for willful FLSA violations and any IMWL claims.

### 4. Wiggins's Pre-Shift Claims

The statute of limitations is not tolled, however, for Wiggins's claims involving unpaid pre-shift work. Neither the complaint nor the amended complaint in *Blakes* contained any allegation about completing unpaid work before the start of work shifts. The only relevant discussion was the following: "Plaintiffs begin each day with a morning meeting at 7:00 a.m. where each is assigned a job that day. From that point on, until 3:30 the Plaintiffs are 'on the clock' and engaged to do work for AT&T." *Blakes* Compl. ¶ 21; *Blakes* Am. Compl. ¶ 21. But there is no mention of how long the morning meeting lasted, any suggestion that the shifts did not begin soon after arrival, or an allegation that Illinois Bell failed to pay compensation for the morning meeting. The complaints instead focused on unpaid work performed during lunch and at the end of the day. *See generally id.* Indeed, Judge Kim concluded that the *Blakes* plaintiffs had not pled any pre-shift claims. *Blakes v. Illinois Bell Tel. Co.*, 75 F. Supp. 3d 792, 802 (N.D. Ill. 2014).

Wiggins argues that the statute of limitations should nevertheless be tolled because "Judge Kim found that the *Blakes* plaintiffs could have amended their complaints to include additional claims had they done so sooner." Pl.'s Resp. at 4. But even though the plaintiffs *could have* amended, they did not, and this was

---

1005, 1012 (N.D. Ill. 2010) (IMWL claims previously brought in federal court did not toll current IMWL action in federal court).

precisely the source of Judge Kim's disapproval. *Blakes,* 75 F. Supp. 3d at 802. At the summary judgment stage, the *Blakes* plaintiffs sought to amend the complaint to add pre-shift (and other) claims, arguing that Illinois Bell was on notice of these claims during discovery. *Id.* But because the plaintiffs knew about these pre-shift claims before discovery, yet neglected to include them in the complaint or amended complaint, Judge Kim did not permit them to amend at this late stage. *Id.* at 804. The court concluded that "venturing beyond allegations based on job-site maintenance, travel, and insufficient time to complete timesheets to include unreasonable efficiency standards, *pre-shift work*, and other post-shift activities changes the basic factual premises in the case." *Id.* at 803-04 (emphasis added). The plaintiffs did not take advantage of several opportunities to amend, and allowing amendment at the close of discovery would have been prejudicial. *Id.* at 805. So even though there might have been discovery in *Blakes* about unpaid pre-shift work such that Illinois Bell cannot claim complete surprise at these claims, the bottom line is that this Court needs an operative pleading with underlying facts as a point of comparison. *See, e.g., Rochford,* 755 F. Supp. at 1428 (courts must look to the class action complaint to determine if a defendant had sufficient notice of the claims). Engaging in some discovery on a claim is not the same as advancing the claim in the litigation; discovery by itself is not, for example, a basis to relate-back a previously unmade claim to the original filing date of the complaint. Fed. R. Civ. P. 15(c) (setting forth the conditions when relation-back is authorized). Here, there is no former complaint containing pre-shift work allegations, so the Court cannot

conclude that the statute of limitations for Wiggins's current pre-shift claims can be tolled.

In sum, because the prior *Blakes* complaints did not include factual allegations about pre-shift work, the statute of limitations is not tolled for Wiggins's current pre-shift claims. At most, these claims extend back to (1) February 28, 2012 for ordinary FLSA violations (two years before Wiggins filed his complaint in the *Tinoco* action); or (2) February 28, 2011 for willful FLSA violations and any IMWL claims (three years before Wiggins filed his complaint in the *Tinoco* action). All earlier pre-shift allegations are dismissed.

## V. Conclusion

For the reasons discussed above, Illinois Bell's motion to dismiss, R. 10, is granted in part as to Wiggins's pre-shift claims, and denied in part as to Wiggins's lunch claims.

ENTERED:

    s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: October 22, 2015

16